Ronald P. Pope #11913
Thomas B. Diehl #23166
Gregory S. Diehl #26818
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
(785)273-8002
(785)273-0744 [FAX]
ron@ralstonpope.com
tom@ralstonpope.com
greg@ralstonpope.com
*Attorneys for the plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSEPH P. HUERTER, Administrator of the Estate of [P.N.D.], deceased, | ) ) ) |
| and | ) ) |
| STEPHANIE RHOADS, Individually and for and on behalf of all of the surviving heirs-at-law of P.N.D. a minor, deceased, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. |
| THE STATE OF KANSAS , DEPARTMENT FOR CHILDREN AND FAMILIES; GINA MEIER-HUMMEL, in her Official Capacity as Secretary; KVC Behavioral Healthcare, Inc.; and JOHN/JANE DOES, Individually and in their personal capacities, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

--------------------------------------------------------

## COMPLAINT

**COME NOW** the Plaintiffs, by and through their attorneys, and for their claims and causes of action against the Defendants allege and state as follows:

1

## I.    PARTIES

1. At all times material to the allegations contained herein, Plaintiff Stephanie Rhoads has been and remains a resident and citizen of Topeka, Shawnee County, Kansas.

2. P.N.D. was born in December 2013 and was killed on September 24, 2016, at the age of two (2) years and nine (9) months.

3. Plaintiff Stephanie Rhoads is the natural biological mother and surviving heir-at-law of P.N.D. and brings this action for the wrongful death of P.N.D. pursuant to the provisions of K.S.A. § 60-1901 *et seq*.

4. Plaintiff Joseph P. Huerter is the duly appointed Administrator of the Estate of P.N.D., deceased which was opened in the District Court of Shawnee County, Kansas.

5. Plaintiff Joseph P. Huerter, as Administrator of the Estate of P.N.D., deceased, brings this survivor action on behalf of the Estate of P.N.D., deceased, pursuant to the provisions of K.S.A. § 60-1801 *et seq*.

6. Defendant State of Kansas Department for Children and Families ("DCF") is an entity/agency of the State of Kansas created by Kansas statute of which Gina Meier-Hummel is the acting Secretary. This defendant may be properly served with process by serving a copy of the Complaint upon Kansas Attorney General Derek Schmidt at 120 SW 10th Ave. 2nd Floor, Topeka, Kansas.

7. Defendant KVC Behavioral Healthcare, Inc. ("KVC") is a private not for profit Kansas corporation hired by the State of Kansas to provide foster care including case management and supervision of services for children placed in state custody.

2

This defendant may be properly served with process by serving a copy of the Complaint upon its resident agent, Jason R. Hooper, at 21350 W. 153rd Street Olathe, KS 66061.

8. Jane/John Does are employees and/or agents of Defendants DCF and/or KVC whose true names, identities, and capacities are presently unknown to Plaintiffs who therefore sue said Defendants by such fictitious names.  These individuals acted under color of state law in their personal capacities as set forth more fully below.  It is anticipated that Plaintiffs will seek leave of court to amend this Complaint to show the true names and capacities of said Defendants when the same have been ascertained.  The Plaintiffs are informed and believe that each of these fictitiously named Defendants is in some way legally responsible for the wrongs more fully set forth below.  These Defendants, as the case may be, are sued in their personal capacities.

## II.    JURISDICTION

9. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

10. This action arises under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and other federal laws of the United States of America and Kansas State law.

11. This Court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331.

12. This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13. This Court has jurisdiction over the Plaintiffs' civil claims under 28 U.S.C. § 1332.

14. The acts giving rise to this action occurred in Kansas.

15. At all relevant times, defendants DCF and KVC transacted business in the State of Kansas.

### III. FACTS AND EVENTS COMMON TO ALL COUNTS

16. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

17. The Kansas State Department for Children and Families ("DCF") is the state department/entity responsible for the safety, supervision, and well-being of all children placed in state custody. Gina Meier-Hummel is the Secretary of that Department.

18. Defendant KVC Behavioral Healthcare, Inc. ("KVC") is a private not-for-profit Kansas corporation hired by the State of Kansas to provide foster care including case management and supervision of services for children placed in state custody, including P.N.D.

19. Not-yet-identified defendants Jane/John Does are citizens of the United States and at all relevant times were acting in their personal capacities in the performance of their official duties under the color of state law, state regulations, and county ordinance.

20. During 2015, P.N.D. was placed in the custody of defendant DCF after it was determined that, because of the people living at 814 S.E. Carnahan in Topeka, Shawnee County, Kansas, ("814 S.E. Carnahan") and the general over-all living

4

conditions at 814 S.E. Carnahan, it was an unfit and unsafe place for P.N.D. to live.

21. At the time P.N.D. was placed in the custody of DCF, her natural father Donald Dunbar was incarcerated under the control of the Kansas State Department of Corrections for charges that included possession of opiates and other narcotics.

22. After P.N.D. was placed in the custody of DCF, defendant KVC was hired by defendant DCF to provide foster care, case management, and supervise services for P.N.D. while she remained in state custody.  Plaintiff's counsel has requested numerous records from defendant DCF regarding the identities of the individuals participating in the care, management, and supervision of P.N.D., but defendant DCF has refused to provide any of the records requested by Plaintiff's counsel.

23. P.N.D. was placed in a safe and secure foster home under the supervision of defendants DCF and KVC.

24. P.N.D. remained in a safe and secure foster home and under the control of defendants DCF and KVC until the summer of 2016 when these defendants negligently proposed a reintegration of P.N.D. and her father by placing P.N.D. back in the custody of her father, Donald Dunbar, who had recently been released from prison.  P.N.D. was placed with her father at 814 S.E. Carnahan, which is the same location that previously had been determined to be an unfit environment for the safety and well-being of P.N.D.

25. At the time of this proposed reintegration, basically the same individuals were still living at 814 S.E. Carnahan and the living conditions at this residence were

basically the same as they had been when P.N.D. was taken into state custody because of the unsafe living conditions at 814 S.E. Carnahan.

26. On or about August 22, 2016, P.N.D. was negligently placed in the custody of Donald Dunbar to live at 814 S.E. Carnahan in Topeka, Shawnee County, Kansas.

27. As part of the reintegration process defendant KVC was to have made advance visitations to 814 S.E. Carnahan for the purpose of evaluating the living conditions and environment at this location and to determine if this was a placement that would be safe and in the best interests and well-being of P.N.D.; defendant KVC was to have developed a reunification plan; defendant KVC was to have prepared Risk Assessment evaluations; defendant KVC was to have prepared a Family Based Assessment; and defendant KVC was to have performed other assigned duties and responsibilities before making any recommendation regarding the proposed reintegration. Defendant KVC failed to adequately perform these duties and responsibilities.

28. In addition to the 2014 incarceration for opiates and other narcotics, Donald Dunbar had several prior incarcerations with the Kansas Department of Corrections which included charges for forgery, theft, possession of controlled substances, and burglary. However, despite this information which was or should have been known to DCF and KVC, these defendants still negligently recommended that P.N.D. be reintegrated and placed in the custody of Donald Dunbar at 814 S.E. Carnahan in the same, or substantially the same, living conditions from which she had previously been removed.

29. Following the alleged completion of their pre-reintegration responsibilities and duties, defendants DCF and KVC made incomplete and inaccurate recommendations to the Shawnee County District Court that P.N.D. be placed back in the custody of Donald Dunbar at 814 S.E. Carnahan in Topeka, Kansas.

30. Based upon the incomplete and inaccurate information and recommendations provided by defendants DCF and KVC, the District Court of Shawnee County approved the recommended reintegration, and P.N.D. was placed back into the custody of Donald Dunbar to live with him at 814 S.E. Carnahan in Topeka, Kansas.

31. In addition to the pre-reintegration duties and responsibilities, defendants DCF and KVC were also charged with the responsibilities and duties of providing follow up services for P.N.D. after she was placed in the custody of Donald Dunbar, with such services including but not limited to making bi-weekly inspections of the home and continuing to access and evaluate whether this was a safe and secure location for P.N.D. and one that was in her best interests. These defendants failed to adequately perform these duties and responsibilities.

32. On September 24, 2016, and for approximately a month prior to that date, P.N.D. was living with her father Donald Dunbar at 814 S.E. Carnahan Ave. in Topeka, Shawnee County, Kansas.

33. As of September 24, 2016, P.N.D. was a minor who was approximately two (2) years and nine (9) months of age.

34. On September 24, 2016, and for some time prior to that date, two large pit bull dogs, which allegedly belonged to Margaret Jaramillo, were being kept at 814 S.E. Carnahan. Ms. Jaramillo was also living at this same address.

35. For some time prior to September 24, 2016, Donald Dunbar knew, or should have known, that each of these pit bulls was extremely vicious/dangerous with a repeated history of prior attacks and vicious behavior towards other animals and people.

36. For some time prior to September 24, 2016, defendants DCF and KVC knew or should have known that these two vicious pit bulls were being kept at 814 S.E. Carnahan Ave. and that these vicious dogs posed an immediate and serious threat to the safety and well-being of P.N.D. However, despite this knowledge, defendants DCF and KVC negligently failed to remove P.N.D. from this obviously dangerous and unsafe environment and these dangerous and unsafe living conditions. These failures directly caused the wrongful death of P.N.D. on September 24, 2016.

37. At some time prior to 8:00 pm on the evening of Saturday, September 24, 2016, P.N.D. was allowed to get out of the house at 814 S.E. Carnahan while her father was sleeping inside, and she went out into the yard of this residence without any adult supervision.

38. While P.N.D. was allowed to be out of the house without any adult supervision, she was viciously and repeatedly attacked by one or both of these pit bulls, and these pit bulls continued to attack P.N.D. until they killed her.

8

39. At some time prior to 8:00 pm, Donald Dunbar awoke and realized he had no idea where P.N.D. was and began looking for her.  When Donald Dunbar was unable to find P.N.D., Margaret Jaramillo made a 911 call to the Topeka Police Department at approximately 8:00 pm and reported that P.N.D. was missing.

40. After receiving this call, Topeka Police Officers went to the residence at 814 S.E. Carnahan and began searching for P.N.D.

41. While searching the front yard at 814 S.E. Carnahan, the Topeka Police Officers discovered P.N.D.'s body under a tarp in the front yard, and it was subsequently determined that P.N.D. had died as a result of the attacks from the pit bulls.

42. At all times material to these matters, defendant DCF had approved and adopted a PPS Policy and Procedure Manual which set forth the duties, responsibilities, policies, and procedures that were to be followed by DCF and all agencies with whom defendant DCF contracted to provide foster care, including case management and supervision of services for children placed in state custody.

43. Defendant KVC was obligated and bound to follow and comply with the contents, procedures, and requirements set forth in the DCF PPS Policy and Procedure Manual in regards to their dealings with P.N.D.

## IV.   CLAIMS

### COUNT I:   P.N.D.'S CLAIMS OF NEGLIGENCE, GROSS NEGLIGENCE AND WANTON CONDUCT AGAINST DEFENDANT KVC AND JOHN/JANE DOES

44. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

9

45. Plaintiffs assert that defendant KVC, individually and by and through its employees and agents identified as John/Jane Does, were negligent, grossly negligent, and wanton in their actions and omissions by failing to exercise reasonable care in the placement, management, and supervision of P.N.D. who was subject to KVC's control in that they failed to do what a reasonable licensed placing agency would do, or did what a reasonable licensed placing agency would not do, in regards to P.N.D. when KVC had, or reasonably should have had, knowledge that by placing P.N.D. in the custody of Donald Dunbar and by leaving P.N.D. in the custody of Donald Dunbar, P.N.D. was at a very high risk of significant danger to her safety and well-being. However, despite this knowledge, KVC placed P.N.D. in Mr. Dunbar's home and custody and left P.N.D. in the custody of Mr. Dunbar without adequate services to ensure her safety and well-being.

46. KVC owed an affirmative duty to P.N.D. to exercise reasonable and ordinary care in the placement, management, and supervision of P.N.D. and this duty was created by a special relationship between KVC and P.N.D. wherein KVC stood in *loco parentis* for P.N.D. who had been entrusted to KVC by DCF for P.N.D.'s protection and care.

47. By the actions and omissions of its employees, KVC breached its duties to P.N.D., and such breaches include but are not limited to KVC's failure to follow the policies and procedures it was obligated to follow; its failure to make the necessary inspections and evaluations required; its failure to properly report required information to DCF and others; its failure to follow and/or comply with

its own policies and procedures; its failure to assign a qualified person to manage P.N.D.'s case; its failure to properly monitor P.N.D.'s needs and situation; by providing inaccurate and/or incomplete information to the Court; by recommending and placing P.N.D. in the custody and home of Donald Dunbar who it knew or should have known was unfit and constituted a significant risk to P.N.D.; and by allowing P.N.D. to remain in an environment that it knew or should have known created an immediate and extreme risk of harm to P.N.D. because of many factors including the fact that Donald Dunbar was keeping two vicious pit bull dogs at the residence.

48. By its actions and omissions, and the actions and omissions of its employees and agents, KVC continually demonstrated a total disregard and a complete and deliberate indifference to the substantial risks of severe harm to P.N.D. that it knew or should have known existed by allowing P.N.D. to remain in the custody of Donald Dunbar at 814 SE Carnahan.

49. Defendant KVC is vicariously liable for the actions and omissions of its employees and agents which were committed within the nature, scope, and course of their employment with KVC.

50. As a direct result of the actions and omissions of KVC and the actions and omissions of its employees and agents, KVC continually demonstrated a total disregard and complete and deliberate indifference to the consequences of its actions, and, as a result P.N.D., suffered severe physical injuries which resulted in P.N.D.'s wrongful death.

51. As a direct result of the actions and omissions of KVC which resulted in her wrongful death, the minor child P.N.D, deceased, was made to suffer injuries and damages, including but not limited to conscious pain, suffering, mental anguish, disability, disfigurement, and other damages prior to her death, and Joseph P. Huerter, as Administrator of the Estate of P.N.D., deceased, is entitled to recover for said damages pursuant to the provisions of K.S.A. § 60-1801, *et seq.*

52. As a direct result of the actions and omissions of KVC which resulted in the wrongful death of P.N.D., the plaintiff Stephanie Rhoads, individually, and for and on behalf of all the surviving heirs-at-law of P.N.D., deceased, has been made to suffer and sustain damages which include, but are not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of comfort and protection, loss of filial care or attention, reasonable funeral expenses and such other damages as allowed by K.S.A. 60-1901 *et seq*.

53. No act or omission on the part of P.N.D. caused or contributed to her serious personal bodily injuries, her wrongful death, or any of the damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against defendant KVC and John/Jane Does pursuant to Count I for an amount in excess of $75,000, reasonable attorneys' fees and expenses, and such other relief as the Court deems just and equitable.

### COUNT II:  P.N.D.'S CLAIMS OF NEGLIGENCE, GROSS NEGLIGENCE, AND WANTON CONDUCT AGAINST DEFENDANT DCF AND JOHN/JANE DOES

12

54. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

55. Plaintiffs assert that defendant DCF individually and by and through its employees and agents, identified above as John/Jane Does, was negligent, grossly negligent, and wanton in its actions and omissions by failing to exercise reasonable care in referring P.N.D.'s case to defendant KVC and by the placement, management, and supervision of P.N.D. who was subject to DCF's control in that it failed to do what a reasonable social service agency would do, or by doing what a reasonable social service agency would not do, in regards to P.N.D. when DCF had, or reasonably should have had, knowledge that by placing P.N.D. in the custody of Donald Dunbar and by leaving P.N.D. in the custody of Donald Dunbar it created a very high risk of significant danger to the safety and well-being of P.N.D.  However, despite this knowledge DCF approved and recommended the placement of P.N.D. in Mr. Dunbar's home and custody and left P.N.D. in the custody of Mr. Dunbar without adequate services to ensure her safety and well-being.

56. DCF owed an affirmative duty to P.N.D. to exercise reasonable and ordinary care in the referral, placement, management, and supervision of P.N.D., and this duty was created by a special relationship between DCF and P.N.D.

57. By its actions and omissions and the actions and omissions of its employees and agents, DCF breached its duty to P.N.D., and such breaches include but are not limited to DCF's failing to follow the policies and procedures it was obligated to follow; by failing to properly monitor and supervise the actions and omissions of

13

defendant KVC in its handling of this referral; by failing to make or verify that the necessary inspections and evaluations required were being done; by failing to properly monitor the information that was being provided to them by defendant KVC; by failing to follow and/or comply with its own policies and procedures; by failing to assign a qualified person to manage P.N.D.'s case; by failing to properly monitor P.N.D.'s needs and situation; by providing inaccurate and/or incomplete information to the Court; by recommending or agreeing to place P.N.D. in the custody and home of Donald Dunbar which it knew or should have known was unfit and constituted a significant risk to P.N.D.; by allowing P.N.D. to remain in an environment that it knew or should have known created an immediate and extreme risk of harm to P.N.D. because of many factors including the fact that Donald Dunbar was keeping two vicious pit bull dogs at the residence.

58. By its actions and omissions and the actions and omissions of its employees and agents, DCF continually demonstrated a total disregard and a complete and deliberate indifference to the substantial risks of severe harm to P.N.D. that it knew or should have known existed by allowing P.N.D. to remain in the custody of Donald Dunbar at 814 SE Carnahan.

59. Defendant DCF is vicariously liable for the actions and omissions of its employees and agents committed with in the nature, scope, and course of their employment with DCF.

60. As a direct consequence of the actions and omissions of DCF and the actions and omissions of its employees and agents, DCF continually demonstrated a total disregard and complete and deliberate indifference to the consequences of its

14

actions, and, as a result, P.N.D. suffered severe physical injuries which resulted in P.N.D.'s wrongful death.

61. As a direct result of the actions and omissions of DCF which resulted in her wrongful death, the minor child P.N.D, deceased, was made to suffer injuries and damages, including but not limited to conscious pain, suffering, mental anguish, disability, disfigurement, and other damages prior to her death, and Joseph P. Huerter, as Administrator of the Estate of P.N.D., deceased, is entitled to recover for said damages pursuant to the provisions of K.S.A. § 60-1801, *et seq.*

62. As a direct result of the actions and omissions of DCF which resulted in the wrongful death of P.N.D., the plaintiff Stephanie Rhoads, individually, and for and on behalf of all the surviving heirs-at-law of P.N.D., deceased, has been made to suffer and sustain damages which include, but are not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of comfort and protection, loss of filial care or attention, reasonable funeral expenses and such other damages as allowed by K.S.A. 60-1901 *et seq*.

63. No act or omission on the part of P.N.D. caused or contributed to her serious personal bodily injuries, her wrongful death, or any of the damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against defendant DCF and John/Jane Does pursuant to Count II for an amount in excess of $75,000, reasonable attorneys' fees and expenses, and such other relief as the Court deems just and equitable.

## COUNT III:  P.N.D.'S CLAIMS UNDER SECTION 42 U.S.C § 1983 AGAINST DEFENDANTS KVC AND JOHN/JANE DOES

64. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

65. Plaintiffs assert a federal constitutional civil rights claim including the wrongful death of P.N.D. under 42 U.S.C. § 1983 against defendants KVC and John/Jane Doe employees of KVC in their personal capacities.

66. At all times material hereto, Defendant KVC, individually, and by and through its employees and agents for whom it is vicariously liable, was working under the color of the statutes, ordinances, regulations, customs, and/or usages of the State of Kansas

67. When defendant KVC assumed responsibility for P.N.D.'s safety, KVC entered into a special relationship with P.N.D. which gave rise to a duty under the Fourteenth Amendment to the United States Constitution requiring KVC to protect the rights of P.N.D., including her rights to life and liberty.

68. By its actions and omissions and the actions and omissions of its employees and agents as set forth above in Count I, defendant KVC violated P.N.D.'s constitutional rights which resulted in personal bodily injury to P.N.D. and ultimately culminated in her wrongful death.

69. Defendant KVC acted with deliberate indifference to the substantial risk of serious harm and danger to P.N.D. when it proposed and facilitated the placement of P.N.D. in the custody of Donald Dunbar and also acted with deliberate indifference to the substantial risk of serious harm and danger to P.N.D. when it allowed P.N.D. to remain in the custody of Donald Dunbar in an unsafe and

dangerous environment and under unsafe and dangerous conditions, thereby depriving her of the rights and privileges afforded to her by the Constitution and laws of the United States of America.

70. Defendant KVC knew, or reasonably should have known, that the breaches of its duties clearly violated the statutory and constitutional rights of P.N.D., including her rights to life and liberty.

71. As a direct result of KVC's violation of P.N.D.'s constitutional rights and deliberate indifference to said rights, P.N.D. was made to suffer serious personal injuries which resulted in her wrongful death.

72. As a direct result of the actions and omissions of KVC which resulted in her wrongful death, the minor child P.N.D, deceased, was made to suffer injuries and damages, including but not limited to conscious pain, suffering, mental anguish, disability, disfigurement, and other damages prior to her death, and Joseph P. Huerter, as Administrator of the Estate of P.N.D., deceased, is entitled to recover for said damages pursuant to the provisions of K.S.A. § 60-1801, *et seq.*

73. As a direct result of the actions and omissions of KVC which resulted in the wrongful death of P.N.D., the plaintiff Stephanie Rhoads, individually, and for and on behalf of all the surviving heirs-at-law of P.N.D., deceased, has been made to suffer and sustain damages which include, but are not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of comfort and protection, loss of filial care or attention, reasonable funeral expenses and such other damages as allowed by K.S.A. 60-1901 *et seq*.

17

74. No act or omission on the part of P.N.D. caused or contributed to her serious personal bodily injuries, her wrongful death, or any of the damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against defendant KVC and John/Jane Does pursuant to Count III: (1) to enjoin them from future conduct violative of 42 U.S.C. § 1983; and (2) for an amount in excess of $75,000, reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988(b), and such other relief as the Court deems just and equitable.

## COUNT IV:  P.N.D.'S CLAIMS UNDER SECTION 42 U.S.C § 1983 AGAINST DEFENDANT DCF AND JOHN/JANE DOES

75. The Plaintiffs incorporate by reference, as if fully set forth herein, all paragraphs preceding and following this section of the Complaint.

76. Plaintiffs assert a federal constitutional civil rights claim including the wrongful death of P.N.D. under 42 U.S.C. Section 1983 against defendant DCF and John/Jane Doe employees of DCF in their personal capacities.

77. At all times material hereto, Defendant DCF, individually, and by and through its employees and agents for whom it is vicariously liable, was working under the color of the statutes, ordinances, regulations, customs, and/or usages of the State of Kansas.

78. When defendant DCF assumed responsibility for P.N.D.'s safety, it entered into a special relationship with P.N.D. which gave rise to a duty under the Fourteenth Amendment to the United States Constitution for DCF to protect the rights of P.N.D., including her rights to life and liberty.

79. By its actions and omissions and the actions and omissions of its employees and agents as set forth above in Count II, defendant DCF violated P.N.D.'s constitutional rights, resulting in personal bodily injury to P.N.D. which ultimately culminated in her wrongful death.

80. Defendant DCF acted with deliberate indifference to the substantial risk of serious harm and danger to P.N.D. when it proposed, approved, and facilitated the placement of P.N.D. in the custody of Donald Dunbar and also acted with deliberate indifference to the substantial risk of serious harm and danger to P.N.D. when it allowed P.N.D. to remain in the custody of Donald Dunbar in an unsafe and dangerous environment and under unsafe and dangerous conditions, thereby depriving her of the rights and privileges afforded to her by the Constitution and laws of the United States of America.

81. Defendant DCF knew, or reasonably should have known, that its breaches of duty clearly violated the statutory and constitutional rights of P.N.D, including her rights to life and liberty.

82. As a direct result of DCF's violation of P.N.D.'s constitutional rights and its deliberate indifference to said rights, P.N.D. was made to suffer serious personal injuries which resulted in her wrongful death.

83. As a direct result of the actions and omissions DCF which resulted in her wrongful death, the minor child P.N.D, deceased, was made to suffer injuries and damages, including but not limited to conscious pain, suffering, mental anguish, disability, disfigurement, and other damages prior to her death, and Joseph P.

Huerter, as Administrator of the Estate of P.N.D., deceased, is entitled to recover for said damages pursuant to the provisions of K.S.A. § 60-1801, *et seq.*

84. As a direct result of the actions and omissions of DCF which resulted in the wrongful death of P.N.D., the plaintiff Stephanie Rhoads, individually, and for and on behalf of all the surviving heirs-at-law of P.N.D., deceased, has been made to suffer and sustain damages which include, but are not limited to, mental anguish, suffering, bereavement, loss of society, loss of companionship, loss of comfort and protection, loss of filial care or attention, reasonable funeral expenses and such other damages as allowed by K.S.A. 60-1901 *et seq*.

85. No act or omission on the part of P.N.D. caused or contributed to her serious personal bodily injuries, her wrongful death, or any of the damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against defendant DCF and John/Jane Does pursuant to Count IV:  (1) to enjoin them from future conduct violative of 42 U.S.C. § 1983; and (2) for an amount in excess of $75,000, reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988(b), and such other relief as the Court deems just and equitable.

/s/ Ronald P. Pope #11913
Ronald P. Pope #11913
Thomas B. Diehl #23166
Gregory S. Diehl #26818
RALSTON, POPE & DIEHL, L.L.C.
*Attorneys for the plaintiff*

20